IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **WILLIAM ROCK,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:12-CV-02030** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **COMMONWEALTH OF** | : | |
| **PENNSYLVANIA, et al.,** | : | |
| | : | |
| **Respondents** | : | |

# M E M O R A N D U M

Petitioner William Rock ("Rock"), who is presently incarcerated at the State Correctional Institution in Houtszdale, Pennsylvania, initiated this action by filing a *pro se* petition for writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254.  (Doc. 1.)  In the petition, Rock challenges his 2009 convictions and sentence in the Court of Common Pleas of Monroe County, Pennsylvania ("trial court").  For the reasons that follow, the petition will be denied.

## I.    Background

On July 9, 2009, Rock was found guilty of: one count of driving under the influence, incapable of driving safely; one count of driving under the influence, highest blood alcohol content; two counts of endangering the welfare of children; one count of careless driving; one count of driving at an unsafe speed; one count of

reckless endangerment; and one count of driving with a suspended license.  (Doc. 13-15 at 4–5.)  The trial court summarized the facts leading to his convictions as follows:

> Defendant William Rock was driving his Toyota Camry sedan north on State Route 402 at approximately 1:30 p.m. on June 24, 2008. His two daughters, ages 8 and 6, were passengers in the back seat of the car.  A witness who was driving behind Mr. Rock's vehicle testified that the vehicle was repeatedly swerving over both the center line and the fog line.  As Mr. Rock approached a motorist in front of him, he drove close to her rear bumper and then attempted to pass her on a blind curve, which was marked as a no passing zone.  He lost control of his car, driving across the left lane and down an embankment.  The vehicle rolled, landed on its roof and caught fire.
>
> The motorist behind [Mr. Rock], John Ambrose, stopped to assist, and found one girl out of the car, and one struggling to get out.  He assisted the child out of the car, and then helped the defendant out of the driver's seat.  After Mr. Rock was out of the car, "all of the sudden he climbed back in the car."  Mr Ambrose urged Mr. Rock to get out of the car because it was on fire.  He saw Mr. Rock reach for something inside the vehicle, and remove it.  Mr. Rock then exited the vehicle, and Mr. Ambrose saw that the object was a vodka bottle, which Mr. Rock proceeded to throw into the woods.  Shortly thereafter, an ambulance responded to the scene and gave medical attention to Mr. Rock and his daughters.  When Pennsylvania State Trooper Thomas Swiech arrived, he noticed that Mr. Rock appeared to be under the influence of alcohol, as evidenced by an unsteady gait, bloodshot eyes, slurred speech and an odor of alcohol.  When Trooper Swiech asked [Mr. Rock] if he had been drinking, [Mr. Rock] told him he had had "two beers."  Defendant had obvious, bleeding injuries, and he was life-flighted from the scene.  At the hospital, his blood-alcohol content was tested and found to be .31%.

2

(Doc. 13-16 at 25–26.)  After Rock was taken from the scene, Mr. Ambrose showed the officer where he had seen Rock throw the vodka bottle.  (*Id.* at 26.)  When the officer found the bottle, it was approximately three-quarters full of vodka.  (*Id.*)

Rock testified at trial that, on June 24, 2008, he had not been drinking alcohol prior to the accident.  (Doc. 13-11 at 5.)  According to Rock, he bought a bottle of vodka while on the way to an acquaintance's shop to mill some wood for a window pane, since he thought he would want to "have a couple drinks" while working.  (*Id.* at 3.)  After obtaining the vodka, Rock stopped at the house of a friend, Jason Benoit, to see if Benoit had tools that he could borrow for the milling.  (*Id.*)  Shortly after leaving Benoit's house, Rock was driving around a curve when he came upon another car in front of him and attempted to brake.  (*Id.*)  Rather than slowing down, Rock lost control of the car and it "just went to the left," veering off the road and flipping over.  (*Id.*)  Rock testified that he then checked on his daughters in the back seat to make sure they were not injured and told them to get out of the car.  (*Id.*)  Afterward, he noticed his own substantial injuries and began to feel immense pain, so he grabbed the vodka bottle and took two "blasts," which he described as equivalent to two "big sips."  (*Id.*)  He then exited the vehicle, but soon went back to retrieve the vodka

3

because he thought he might need more.  (*Id.*)  However, when he was about to drink

more he began to feel too sick to drink, and threw the bottle on the ground.  (*Id.*)

Rock attempted to obtain two witnesses whom he believed would provide

support for his testimony, but they did not arrive on the day of trial.  (Doc. 13-1 at 8.)

Just before the start of trial, Rock requested that the trial court grant a continuance so

he could obtain his witnesses, explaining that his attorney had not sent out subpoenas

for these witnesses until the day before and they had not yet been served.  (*Id.*)  The

first witness Rock wished to call was Wilfredo Arroyo, a mechanic who purportedly

would have testified that he had worked on another one of Rock's cars a few weeks

prior to the accident, and that someone had loosened bolts on the car so that one of

the front wheels fell off.  (*Id.* at 8–9.)  The second witness was Jason Benoit, who

purportedly would have testified that he had spoken with Rock about five minutes

before the accident, and that Rock appeared sober at that time.  (*Id.* at 9.)  The trial

court denied Rock's request for a continuance.  (*Id.* at 10.)

On September 29, 2009, the trial court sentenced Rock to an aggregate

sentence of no less than 66 and no more than 144 months.  (Doc. 13-16 at 8.)  On

November 3, 2009, Rock filed an appeal with the Superior Court of Pennsylvania

("Superior Court"), claiming that the trial court erred by denying Rock a continuance

4

so that he could secure his two witnesses.  On August 2, 2010, the Superior Court affirmed the trial court's judgment.  (Doc. 13-17 at 23–29.)  The Superior Court found that Arroyo's testimony would not have been relevant to the trial, as he could only testify about a car that was not involved in the accident, and that Benoit's testimony would have only been cumulative to Rock's testimony, and was thus not essential to Rock's defense.  (*Id.* at 27–28.)  The Superior Court further found that, even if the trial court had committed error, it would have been harmless error, since the proposed testimony would have been insufficient to overcome the "copious evidence" submitted against him.  (*Id.* at 29.)

On October 15, 2010, Rock filed a *pro se* petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), 42  Pa. Cons. Stat. Ann. §§ 9541 *et seq.*  (Doc. 13-18–13-19.)  In his PCRA petition, Rock claimed that: (1) his trial counsel rendered ineffective assistance by failing to secure his two witnesses; (2) government officials obstructed his right to appeal; and (3) exculpatory evidence had become available that was unavailable at the time of trial.  (Doc. 13-18 at 2.)  On January 3, 2011, Rock's appointed counsel for his PCRA petition filed a supplement to the petition, which raised the additional claim that Rock's counsel rendered ineffective assistance by failing to challenge his sentence for being significantly

5

higher than one that was recommended when Rock initially pled guilty.[1]  On March

25, 2011, the trial court, now acting as the PCRA court, denied Rock's petition.

(Doc. 13-21 at 11–22.)  The PCRA court found that Rock's counsel was not

ineffective for failing to secure his witnesses because Arroyo's testimony would have

been irrelevant and it was impossible to tell what Benoit would have testified to or if

his cooperation could have even been secured, since he had not shown up for the

PCRA hearing, nor had Rock obtained an affidavit from him.  (*Id.* at 17–19.)  The

court also found that Rock's counsel was not ineffective for failing to challenge his

sentence because Rock was ultimately found guilty of more crimes than he had

previously pled guilty to.  (*Id.* at 19–20.)  The court rejected his claim regarding

exculpatory evidence because the only evidence Rock proffered was the testimony of

Arroyo and Benoit.  (*Id.* at 20.)  The court rejected his claim of obstruction of his

right to appeal because it was not developed in the briefs or at the hearing.  (*Id.* at 21.)

On July 18, 2011, Rock filed a second PCRA petition.  (Doc. 13-22.)  This

petition  raised thirteen issues, among them that: (1) his trial counsel was ineffective

---

[1] Prior to trial, Rock had entered a guilty plea to one count of driving under the influence of alcohol, 75 Pa. Cons. Stat. § 3802(c), one count of endangering the welfare of a child, 18 Pa. Cons. Stat. § 4304(a)(1), and one count of recklessly endangering another person, 18 Pa. Cons. Stat. § 2705. (*See* Doc. 13 at 4.)  However, after discovering that his presentence investigation report recommended an aggregate sentence of four to eight years for these crimes, Rock withdrew his guilty plea.  (*See id.*).

for failing to raise various arguments at trial and for arguing against him when he testified (after the jury trial) regarding his suspended license; (2) his PCRA counsel was ineffective and did not communicate with him in preparation of his hearing; (3) his right to appeal was obstructed because his appellate counsel refused to raise a claim of ineffectiveness regarding his trial counsel; and (4) the evidence was insufficient to convict him at trial.  (Doc. 13-22.)  The PCRA court dismissed Rock's second petition without a hearing on October 7, 2011, finding that Rock did not make a prima facie showing that a miscarriage of justice may have occurred and that all of his claims had either been previously ruled upon or waived.  (Doc. 13-23 at 12–20; Doc. 13-24 at 33.)

On November 23, 2011, Rock appealed the dismissal of his second PCRA petition to the Superior Court, claiming several errors committed by both the PCRA and trial courts.  (Doc. 13-24.)  On December 21, 2011, during the pendency of his appeal, Rock also attempted to file a third PCRA petition, claiming that he had new evidence to present in the form of the affidavit of Jason Benoit.  (Doc. 13-27.)  The next day, the PCRA court dismissed this petition, due to his pending appeal.  (Doc. 13-27 at 13.)  On July 30, 2012, the Superior Court affirmed the PCRA court's

dismissal of Rock's second petition, stating only that all of Rock's issues in the petition were "meritless and/or improperly raised."  (Doc. 13-28 at 14.)

On September 14, 2012, Rock filed another PCRA petition, again claiming that he received ineffective assistance of counsel at trial and that he had recently obtained exculpatory evidence that was not available at the time of trial in the form of Benoit's affidavit.  (Doc. 13-28 at 1–16.)  On December 27, 2012, the PCRA court issued a notice of dismissal without hearing for Rock's petition, finding that it could not rule on his claims because his petition was filed more than one year after the judgment on his case became final, and that Rock failed to allege any of the exceptions to the filing deadline.  (Doc. 13-29 at 3–5.)  On January 15, 2013, Rock filed a response in which he argued that his petition fell within an exception to the deadline for claims based on facts previously unknown to the petitioner,[2] as he was previously unaware that he could present an affidavit in a PCRA petition.  (*Id.* at 25.)  The PCRA court dismissed the petition without a hearing.  (Doc. 13 at 9.)

Rock timely filed the instant petition for writ of habeas corpus on October 10, 2012.  (Doc. 1.)  Respondents filed a response on April 22, 2013.  (Doc. 13.)  Rock

---

[2] 42 Pa. Cons. Stat. § 9545(b)(1)(ii).

filed a traverse to the response on June 3, 2013.  (Doc. 16.)  Thus, the matter is now ripe for disposition.

## II.   <u>Discussion</u>

In his petition, Rock raises the following grounds for relief:

(1) The trial court denied Rock his right to compel witness testimony in

his favor; and

(2) Rock's trial counsel rendered ineffective assistance.

(Doc. 1 at 5, 8.)[3]  Respondents contend that these issues were correctly adjudicated on the merits in the state courts.  (Doc. 13 at 1–2.)  For the reasons that follow, this court will deny Rock's petition in its entirety.

### A.   <u>Standard of Review</u>

The scope of this court's review on the merits of the issues presented in a

---

[3] Rock also initially claimed that he was denied his right to an appeal and that his counsel during his PCRA petition rendered ineffective assistance.  (Doc. 1 at 6, 9.)  On August 19, 2014, Rock moved to withdraw these two grounds from the petition (Doc. 22) and this court granted his motion on August 21, 2014 (Doc. 23).  This court also notes that claims of ineffective assistance of counsel during post-conviction proceedings are barred from federal habeas review, unless the petitioner is claiming that the ineffectiveness of state post-conviction counsel serves as cause to excuse the procedural default of claims alleging the ineffective assistance of trial counsel.  *See Martinez v. Ryan*, 566 U.S. ___, 132 S. Ct. 1309 (2012).

petition for a writ of habeas corpus by a prisoner in the custody of a state court is set forth in 28 U.S.C. § 2254(d). That section states, in relevant part, that exhausted claims that have been adjudicated on the merits by the state courts are subject to review under the standard of whether they are "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). AEDPA places the burden on the petitioner to make this showing. *Williams v. Taylor*, 529 U.S. 362 (2000).

The "contrary to" and "unreasonable application" clauses of Section 2254(d)(1) have independent meaning. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court judgment is "contrary to" federal law when it is "diametrically different, opposite in character or nature, or mutually opposed" to "clearly established" decisions of the United States Supreme Court. *Williams*, 529 U.S. at 405. This may occur if "the state court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Wilkerson v. Klem*,

412 F.3d 449, 452 (3d Cir. 2005) (quoting *Williams*, 529 U.S. at 406).  Alternatively, "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519, 520 (2003)).  For purposes of § 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (internal citations omitted).  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 75–76 (quoting *Williams*, 529 U.S. at 411).  Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ. *Andrade*, 538 U.S. at 75.  A state court's decision is not objectively unreasonable so long as at least some "fairminded jurists" could disagree over its correctness. *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 786 (2011).

Turning to Section 2254(d)(2), as well as the related Section 2254(e), the test for the "unreasonable determination of facts" clause is whether the petitioner has demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state court's determination of the facts was unreasonable in light of the record. *Rountree v. Balicki*, 640 F.3d 530, 537 (3d Cir. 2011) (citing *Rice v. Collins*, 546 U.S. 333, 338–39, 126 S. Ct. 969 (2006) ("State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by 'clear and convincing evidence.'") (citing *Miller-El v. Dretke*, 545 U.S. 231, 240 125 S. Ct. 2317 (2005)); *see also Simmons v. Beard*, 590 F.3d 223, 231 (3d. Cir. 2009) ("Under the § 2254 standard, a district court is bound to presume that the state court's factual findings are correct, with the burden on the petitioner to rebut those findings by clear and convincing evidence."). Further, as with § 2254(d)(1), the evidence against which a federal court measures the reasonableness of the state court's factual findings is the record evidence at the time of the state court's adjudication. *Rountree*, 640 F.3d at 538 (citing *Cullen v. Pinholster*, 563 U.S. ___, ___, 131 S. Ct. 1388,  1401–03 (2011)).

Finally, AEDPA scrutiny is applicable only if the state court adjudicated the petitioner's claims "on the merits."  28 U.S.C. § 2254(d); *see Appel v. Horn*, 250 F.3d

203, 210 (3d Cir. 2001).  "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004) (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001)), *rev'd on other grounds sub nom Rompilla v. Beard*, 545 U.S. 374 (2005).  Further, an "adjudication on the merits" can occur at any level of state court.  *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).  However, "to qualify as an 'adjudication on the merits,' the state court decision must finally resolve the claim.  This means that the state court's resolution of the claim must have preclusive effect."  *Id*. (citing *Rompilla*, 355 F.3d at 247 (quoting *Sellan*, 261 F.3d at 311)).  Where a state court has not reached the merits of a claim thereafter presented to a federal habeas court, the deferential AEDPA standards do not apply, and the federal court must exercise *de novo* review over pure legal questions and mixed questions of law and fact.  *Simmons v. Beard*, 581 F.3d 158, 165 (3d Cir. 2009) (citing *Appel*, 250 F.3d at 210).  However, the state court's factual determinations are

13

still presumed to be correct, rebuttable upon a showing of clear and convincing evidence.[4] *Simmons*, 581 F.3d at 165 (citing *Appel*, 150 F.3d at 210).

In the instant case, all but one of Rock's claims, discussed *infra*, were adjudicated on the merits by the state courts. Since Rock's claim of ineffective assistance of counsel stems from his claim that the trial court denied him his right to compel witnesses for trial, the court will examine that claim first.

### B. Claim 1—Denial of Right to Compel Witnesses for Trial

### i. Supreme Court Precedent

The Sixth Amendment provides, in part, that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI. The rights guaranteed under the Compulsory Process Clause are applicable in all state criminal prosecutions through the Due Process Clause of the Fourteenth Amendment. *Washington v. Texas*, 388 U.S. 14, 18 (1967). A defendant's right to produce witnesses in his favor "stands on no lesser footing than the other Sixth Amendment rights" as it "is in plain terms the right to present a defense, the right to present the defendant's version of the facts as

---

[4] In fact, "the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d)." *Thomas*, 570 F.3d at 116 (quoting *Nara v. Frank*, 488 F.3d 187, 200–01 (3d Cir. 2007)).

well as the prosecution's to the jury so it may decide where the truth lie." *Id.* at 18–19.

Despite the importance of the rights guaranteed under the Compulsory Process Clause, the Supreme Court has not yet established a single, clear test for determining the constitutionality of actions that might deny or abridge a defendant's right to produce witnesses.[5]   Nonetheless, the Court has set some clear guidelines under the clause that are relevant to this case.  The Court has held that the right only extends to securing witness testimony where the defendant can offer "some showing" that the testimony would be both material and favorable to the defense.  *United States v. Valenzuela-Bernal*, 458 U.S. 858 (1982).  The Court has also consistently held that the "Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system," which include both procedural and evidentiary demands.  *United States v. Nobles*, 422 U.S. 225, 241 (1975) (holding that a court may preclude a defendant from offering the testimony of an investigator where the investigator refused to turn over a copy of his investigative report to the prosecution).  *See also Taylor v. Illinois*, 484 U.S. 400 (1988) (holding that a court

---

[5] Justice Powell wrote over 20 years ago that the Court "has had little occasion to discuss the contours of the Compulsory Process Clause," and the statement seems to remain true.  *Pennsylvania v. Richie*, 480 U.S. 39, 55–56 (1987) (discussing the Court's Compulsory Process Clause jurisprudence before deciding the case under a Due Process Clause analysis).

may preclude the admission of witness testimony where the defendant did not identify the witness prior to trial); *United States v. Scheffer*, 523 U.S. 303 (1998) (upholding an evidentiary rule barring the admission of lie detector results in military trials). However, a criminal defendant's right to offer otherwise "relevant and material" testimony from "physically and mentally capable" witnesses cannot be abridged by statutes or rules that are arbitrary or serve no legitimate purpose. *Washington,* 388 U.S. at 23 (holding that a statute barring co-indicted persons from testifying on each other's behalf violated the Compulsory Process Clause).

Finally, claims arising under the Compulsory Process Clause also tend to implicate the Due Process Clause. *See*, *e.g.*, *Pennsylvania v. Richie*, 480 U.S. 39, 40 (1987) (reviewing the respondent's Compulsory Process Clause claim under "the broader protections of the Due Process Clause"). Several federal appellate courts have reviewed claims where a defendant was denied a continuance to secure witness testimony using principles drawn from the jurisprudence of both clauses. *See, e.g.*, *Bennet v. Scroggy*, 793 F.2d 722 (6th Cir. 1986); *Hicks v. Wainwright*, 633 F.2d 1146 (5th Cir. 1981). Although the Due Process Clause has also not yielded a mechanical test for evaluating these claims, the appellate courts tend to take the following as guidance in these cases:

16

> There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964). Thus, this court finds the following to be the clearly established federal law in this area: (1) a defendant only has a right to witness testimony that can be shown to be both (a) material and (b) favorable to the defense; (2) the right to witness testimony can be abridged for legitimate, non-arbitrary procedural and evidentiary concerns; and (3) the question of whether a defendant's due process rights have been violated by the denial of a continuance depends heavily on the factual circumstances before the trial judge.

### ii.  The Superior Court's Decision

In the instant case, the Superior Court reviewed Rock's claim by considering the following factors:

(1) the necessity of the witness to strengthen the defendant's case;

(2) the essentiality of the witness to the defendant's defense;

(3) the diligence exercised to procure his or her presence at trial;

(4) the facts to which he or she could testify; and

(5) the likelihood that he or she could be produced at court if a continuance were granted.

17

(Doc. 13-17 at 26; (quoting *In re A.J.*, 829 A.2d 312, 314 (Pa. Super. 2003)).)  This test is not contrary to clearly established federal law.  Notably, the first, second, and fourth factors follow from the Supreme Court's holding in *Valenzuela*, as they directly address the materiality and favorability of the witness testimony.  The third and fifth factors address legitimate procedural concerns of the trial court, and the consideration of these factors does not contradict any established Supreme Court precedent.

Nor did the Superior Court's decision constitute an unreasonable application of the law in this case.  The Superior Court upheld the denial of a continuance with respect to securing the testimony of Mr. Arroyo because it concluded that Mr. Arroyo's testimony was irrelevant to Rock's case.  (Doc. 13-17 at 27–28.)  Mr. Arroyo was purportedly going to testify that he had discovered signs of tampering when he had worked on another car owned by Rock.  (*Id.* at 27.)  Since Mr. Arroyo had not actually inspected the car involved in the crash, the Superior Court concluded that this testimony would have been irrelevant, absent any further evidence to suggest a link between the two cars.  (*Id.)*  The conclusion reached by the Superior Court was a reasonable application of Supreme Court precedent.  The Supreme Court has made it clear that a defendant's right to present witness testimony can be restricted by

18

legitimate evidentiary concerns, and fairminded jurists could agree with the Superior

Court's conclusion that Mr. Arroyo's testimony was not relevant.

Turning to Rock's other proposed witness, Benoit purportedly would have

testified that he had seen Rock shortly before the crash and that, in his opinion, Rock

did not appear intoxicated at the time.  (*Id.* at 28.)  The Superior Court reasoned that,

although Benoit's testimony would have lent "some support" to Rock's argument that

he did not drink until after the crash, this support would have only been cumulative to

Rock's testimony.  (*Id.*)  Furthermore, it found that Benoit's testimony would have

been insufficient to rebut the expert testimony against Rock, which led it to conclude

that Benoit's testimony was "not essential" to Rock's defense.  (*Id.*)  Since Benoit's

testimony would have only been cumulative and non-essential, the Superior Court

found that the trial court did not abuse its discretion in denying the continuance.

The Superior Court's characterization of Benoit's testimony as merely

cumulative and non-essential may be controversial.  While Benoit's testimony was

technically cumulative, in that it would purportedly have been a repetition of Rock's

own testimony, such testimony is generally not characterized as "merely" cumulative

in situations where it is the defendant's only means of bolstering his account of what

happened, which jurors would likely consider to be self-serving.  *See, e.g.*, *Skipper v.*

*South Carolina*, 476 U.S. 1, 8 (1986) (finding that it was "implausible" to characterize testimony of disinterested persons as "cumulative" and its exclusion "harmless" where the only other testimony defendant was able to offer in support of the issue was his own); *see also U.S. v. Bergrin*, 682 F.3d 261, 280 n. 23 (3d Cir. 2012).  Nonetheless, this questionable characterization does not mean the Superior Court's decision was an unreasonable application of the law.  The trial court did not outright exclude Benoit's testimony from trial, but merely refused to grant a continuance for Rock to secure his testimony, and it is not necessary to characterize the testimony as "merely cumulative" in order to support the denial of a continuance. At least some fairminded jurists would agree with the Superior Court's rationale that the testimony against Rock was so overwhelming as to render Benoit's testimony nonessential, and this is sufficient to support the reasonableness of the Superior Court's decision.  Thus, the Superior Court applied a rule consistent with Supreme Court precedent in that it balanced the importance of Benoit's testimony with other evidentiary and procedural concerns faced by the trial court, and it was not unreasonable in applying that rule.  Therefore, this court cannot grant habeas relief on this claim.

## C.    Claim 2—Ineffective Assistance of Trial Counsel

### i.    Supreme Court Precedent

In addition to the right to compel witnesses, the Sixth Amendment further holds that "in all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to the assistance of counsel has long been recognized to apply in State prosecutions through its incorporation into the Due Process clause of the Fourteenth Amendment. *Powell v. State of Alabama*, 287 U.S. 45 (1932). The Supreme Court has also long recognized that "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970).

In *Strickland v. Washington*, the Court set forth the current two-prong test for determining whether counsel rendered constitutionally ineffective assistance. 466 U.S. 668 (1984). Under *Strickland*, in order to succeed on a claim of ineffective assistance of counsel, a criminal defendant must show both that counsel's performance was "deficient" and that this deficient performance prejudiced his defense. *Id.* at 687. When determining whether counsel's performance was deficient, courts "must be highly deferential," allowing counsel a "wide latitude . . . in making tactical decisions," and remain conscious of the "distorting effects of hindsight." *Id.*

21

at 689.  In order to establish the requisite prejudice, it must be shown that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  A "reasonable probability" is, for the purpose of this test, "a probability sufficient to undermine confidence in the outcome." *Id.*

One exception to the test set forth above applies when a defendant alleges that his or her counsel was burdened by a conflict of interest.  In cases where a defendant does not object to an alleged conflict at trial, but instead raises that issue for the first time on appeal or in post-conviction proceedings, the defendant is relieved from making a showing of prejudice, but must still show that counsel had a conflict of interest and that this conflict "adversely affected" counsel's performance.  *Mickens v. Taylor*, 535 U.S. 162, 173–74 (2002).

## ii.    The PCRA Court's Decision

Rock claims that his trial counsel rendered ineffective assistance by: 1) harboring a conflict of interest, as evidenced by her adversarial stance against Rock during a pre-trial conference; 2) failing to secure two key witnesses for trial; and 3)

failing to adequately cross-examine the prosecution's witnesses.[6]  (Doc. 4 at 17–19.)

The PCRA court reviewed each of Rock's ineffective assistance of counsel claims

under a standard requiring Rock to satisfy the following "three-prong inquiry":

> (1) whether the underlying claim is of arguable merit; (2) whether or not
> counsel's acts or omissions had any reasonable strategic basis designed
> to advance the interests of the appellant; and (3) whether there is a
> reasonable probability that the outcome of the proceedings would have
> been different, but for the errors and omissions of counsel.

(Doc. 13-21 at 16 (quoting *Commonwealth v. Khalil*, 806 A.2d 415, 421 (Pa. Super.

2002)).)  This standard conforms closely to the requirements of *Strickland*; the third

prong of this inquiry is the same standard as that used for the "prejudice" prong of

*Strickland*, and the first two prongs are essentially two aspects of the "deficient

performance" prong of *Strickland*.  Having established that the PCRA applied a rule

consistent with Supreme Court precedent, this court will now examine whether the

PCRA Court applied that rule reasonably with respect to each of the bases for

---

[6] Rock also raises other related claims of ineffective assistance, such as counsel's failure to call his children as witnesses, to object to all of the state's witness testimony as irrelevant, and to adequately discuss his testimony with him before trial.  (Doc. 4 at 21–23.)  Because these claims were not presented to the state courts, and because Rock is now procedurally barred from raising them in another PCRA petition, this court finds them to be procedurally defaulted.  *See Coleman v. Thompson*, 501 U.S. 722 (1991).  Since Rock has not made a showing of cause for this procedural default, nor that failing to review these claims would result in a fundamental miscarriage of justice, this court cannot review these claims.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  The procedural default of these claims does not prevent this court from reviewing the rest of Rock's claims.  *See Wenger v. Frank*, 266 F.3d 218, 227–228 (3d Cir. 2001).

ineffective assistance that Rock alleges.  Because the presence of a conflict of interest

would affect the analysis of Rock's other ineffective assistance claims, the conflict of

interest claim will be examined first.

### a.   Counsel's Alleged Conflict of Interest

Before the start of trial, the parties conferred with the trial court outside of the

presence of the jury to decide how to proceed with a pending charge against Rock for

driving on a suspended license.  (Doc. 13-1 at 4.)  At this conference, Rock asserted

that he did not know he had to take any action to reinstate his license after the time

period for its suspension lapsed.  (*Id.* at 6.)  Rock claims that his attorney then "took

on title of prosocuter" [sic] when she told Rock the following: "It was suspended due

to the fact, once again, this is a legal argument, you never reinstated your license."

(Doc. 4 at 22, Doc. 13-1 at 6.)  Rock's attorney followed that statement with several

others that were arguably argumentative toward Rock.  (*See* Doc. 13-1 at 6–7.)  Rock

asserts that this interaction (along with the other asserted failings of his trial counsel,

discussed *infra*) is evidence of his trial counsel's desire to have him convicted.  (Doc.

4 at 23.)

The PCRA court addressed this interaction when reviewing Rock's second

PCRA petition, but only discussed whether Rock's counsel performed deficiently at

24

the conference, and not whether her actions were evidence of a conflict of interest. (Doc. 13-23 at 17.)  In general, a court need not reach the issue of whether there was a conflict of interest if it finds that there was no deficient performance.  *Mickens*, 535 U.S. at 173–74.  However, since the PCRA court decided one of Rock's ineffective assistance of counsel claims on the basis of a lack of prejudice, this court finds it necessary to explicitly address the conflict of interest claim here.[7]

The statements made by Rock's attorney give no indication of any conflict of interest on her part.  Rather, they are clearly instances of Rock's attorney attempting to explain the nature of the charge against him over Rock's insistence that his license was not suspended.  While this may not have been the most discreet way for Rock's counsel to explain the legal issue to him, her conduct gives no indication of any motivation other than a desire to resolve the issue as quickly and favorably as possible for her client.  Nor do any of the other instances of conduct that Rock complains about*, see infra*, indicate any kind of split loyalty on her part.  Thus,

---

[7] Because the PCRA court did not address this issue, this court exercises *de novo* review of this claim.  *See Simmons v. Beard*, 581 F.3d 158, 165 (3d Cir. 2009).  This court also notes, however, that the PCRA court likely did not squarely address the conflict of interest issue because it did not understand that to be the basis for Rock's claim, which raises the question of whether Rock "fairly presented" this claim to the PCRA court.  Because this court finds the claim to be completely without merit, there is no need to reach the issue of whether it was properly exhausted.  *See* 28 U.S.C. § 2254(b)(2).

Rock's other claims of ineffective assistance of counsel can only succeed if both prongs of the *Strickland* test are fulfilled.

Furthermore, the PCRA court was reasonable in holding that Rock's counsel's conduct at this conference did not amount to "deficient" conduct under the *Strickland* standard, as it falls well within the acceptable range of tactical decision-making afforded to counsel under the standard.

### b.   Counsel's Failure to Call Witnesses

The PCRA court concluded that Rock's counsel was not ineffective for failing to summon Arroyo because Rock was not prejudiced by the lack of Arroyo's testimony.  (Doc. 13-21 at 18.)  Echoing the Superior Court, the PCRA court reasoned that Rock could not have been prejudiced because, without some evidence that the car involved in the crash suffered from a mechanical defect, Arroyo's testimony would have asked the jury "to make a giant inferential leap from the fact that one car was tampered with to the conclusion that the vehicle involved in the crash was sabotaged." (Doc. 13-21 at 19.)  This conclusion is clearly a reasonable application of the law, and it is worth noting that, had Rock's attorney called Arroyo to testify, the state likely would have objected to the testimony as irrelevant.  (*See* Doc. 13-1 at 11.)

26

With respect to her failure to call Benoit to testify, the PCRA court found that Rock "failed to establish that Benoit's absence at trial was prejudicial," because Rock was not able to produce Benoit (nor an affidavit from Benoit) for the PCRA hearing. (Doc. 13-21 at 18.)  As the burden of proof is on the party asserting ineffective assistance of counsel, this is also a reasonable application of the law.  *See Strickland*, 466 U.S. at 687.  Furthermore, even accepting Rock's assertion of what Benoit would have testified, it is not unreasonable to say that Rock's defense was not prejudiced by its absence.  Benoit would only have been able to testify about his own impressions of Rock's demeanor during a brief encounter shortly before the accident, and reasonable jurists could find that the testimony against Rock was so overwhelming that Rock's defense was not prejudiced by its absence.

### c.    Counsel's Failure to Cross-Examine

Rock raises several related issues regarding defects he perceives in how his trial counsel conducted the trial, most of them concerning trial counsel's cross-examination of witnesses.  Rock claims, in short, that his trial counsel:

1)    should have asked the state's witnesses on cross-examination if it was possible that Rock drank alcohol only after the accident;

2)      should have asked the state's witnesses on cross-examination if it
        was possible that Rock's blood alcohol content could have been
        the result of solely drinking alcohol after the accident; and

3)      should have pointed out that "two blasts" (the amount that Rock
        claims he consumed after the accident) was equal to the amount of
        alcohol missing from the bottle of vodka.

(Doc. 4 at 21–23.)  In its review of Rock's second PCRA petition, the PCRA court

found that none of these points amounted to deficient performance.  For the first two

issues, the PCRA court pointed out that Rock's attorney did focus on this issue in her

closing argument, but that there would have been nothing to gain by asking the police

officers or eyewitnesses about it, as none of them would have had relevant testimony

on that point.  (Doc. 13-23 at 16.)  It also worth pointing out that Rock's attorney did

ask the state's expert witness whether it is possible to determine when someone drank

alcohol based on blood test results, to which the witness replied that the test does not

give conclusive results on that point.  (Doc. 13-10 at 10.)  For the third issue, the

PCRA court pointed out that a "blast" is a "highly subjective" unit of measurement

and that the amount of vodka that was actually consumed (rather than spilled) and

when that alcohol was consumed would have been questions of fact for the jury to

determine.  (Doc. 13-23 at 16–17.)  There would be little to gain, according to the

PCRA court, from pointing out that the amount missing could be characterized as two

"blasts," as that does nothing to answer the question of *when* the two "blasts" were consumed. (*Id.*) This court finds no flaws with any aspect of the PCRA court's reasoning here, and certainly does not find it to amount to an unreasonable application of the *Strickland* standard.

Thus, since the PCRA court applied a legal standard consistent with Supreme Court precedent to each basis for Rock's claim of ineffective assistance of his trial counsel, and applied that standard reasonably, this court has no valid basis to grant habeas relief on this claim.

## III.   Conclusion

Rock's claims were adjudicated in the State courts using standards consistent with clearly established federal law and resulting in decisions that were reasonable applications of such law. Accordingly, this court will not grant a writ of habeas corpus with respect to any of the claims in the petition, and thus will deny the petition for writ of habeas corpus. (Doc. 1.)

The court must now determine whether a certificate of appealability should issue. A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Here, the court denies a certificate of appealability because jurists of reason would not find it debatable that Rock's petition must be denied.

　　　　An appropriate order will issue.



　　　　　　　　　　　　　　　　　S/SYLVIA H. RAMBO
　　　　　　　　　　　　　　　　　United States District Judge


September 22, 2014